## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREL HILBERT, on behalf of himself and all others similarly situated, 2039 New Hampshire Avenue, N.W. Washington, D.C. 20009 | ) ) ) ) )  **Case No.** |
| | ) |
| *Plaintiff,* | ) ) ) |
| v. | )  **Complaint** |
| | ) |
| FORD MOTOR COMPANY 1 American Road Dearborn, Michigan 48126 SERVE: C T Corporation System 28 Liberty Street New York, NY 10005 | )  **Jury Trial Demand** ) ) ) ) ) ) ) ) |
| | ) |
| *Defendant.* | ) ) |

## VERIFIED COMPLAINT

## INTRODUCTION

1.    Plaintiff, Mr. Laurel Hilbert, on behalf of himself and others similarly situated, asserts the following claims against Defendant Ford Motor Company ("Defendant") as follows:

2.    The Supreme Court of the United States has stated "[t]he Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (the Court noted that in 1992, less than two (2) percent of Americans had Internet access whereas by 2018 the number increased to roughly eighty-

nine (89) percent).  This number has steadily increased as polling data from 2021 shows ninety-three (93) percent of American adults use the Internet.[1]

3.      Based on a 2018 report, over forty (40) million people in the United States were documented with a disability, including over seven and a half (7.5) million individuals who have a visual disability.[2]  According to the National Federation of the Blind's 2016 report (updated in 2019), approximately 418,500 visually impaired persons lived in the State of New York.[3]

4.      Plaintiff brings this civil rights action against Defendant for its failure to design, construct, maintain, update and operate its website and/or mobile application platforms (hereinafter "Websites") to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people.

5.      Plaintiff uses the terms "blind" or "visually impaired" interchangeably to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

6.      Defendant's denial of full and equal access to its Websites and therefore denial of its goods and services offered thereby is a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12182(a), the New York State

---

[1]      Internet/Broadband Fact Sheet, PEW RESEARCH CENTER (April 7, 2021) https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ (last visited November 23, 2022).  Indeed, the polls also show ninety-nine (99) percent of American adults between the ages of eighteen (18) to twenty-nine (29) use the Internet, and ninety-eight (98) percent of American adults between the ages of thirty (30) to forty-nine (49) use the Internet.

[2]      Lee W. Erickson & S. von Schrader, *2018 Disability Status Report: United States*, CORNELL UNIVERSITY 10 (2020), https://www.disabilitystatistics.org/StatusReports/2018-PDF/2018-StatusReport_US.pdf (last visited November 23, 2022).  The report uses data from the 2018 American Community Survey.

[3]      Blindness Statistics, National Federation of the Blind (updated January 2019) https://nfb.org/resources/blindness-statistics (last visited April 27, 2023).

Human Rights Law ("NYSHRL"), N.Y. CLS Exec. §§ 290, *et seq.*, the New York City

Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.*, and the Unruh

Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, ("Unruh Act").

7.     Because Defendant's Websites are not equally accessible to blind and visually impaired

consumers, they violate the ADA, the NYSHRL, the NYCHRL and the Unruh Act.

Plaintiff seeks a permanent injunction, actual and liquidated damages, and reasonable

attorneys' fees and costs to cause a change in Defendant's corporate policies, practices,

and procedures so that Defendant's Websites will become and remain accessible to blind

and visually impaired consumers.

<u>**JURISDICTION AND VENUE**</u>

8.     This Court has subject-matter jurisdiction over this action under 28 U.S.C § 1331 and 42

U.S.C. § 12181 as Plaintiff's claims arise under Title III of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and 28 U.S.C. § 1332.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims

under the New York State Human Rights Law ("NYSHRL"), N.Y. CLS Exec. §§ 290, *et

seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-

101, *et seq.*, and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, ("Unruh Act").

10.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant

conducts and continues to conduct a substantial and significant amount of business in this

District via the internet regarding the subject Websites addressed by this action.

11.    Defendant is subject to personal jurisdiction in this District.  Defendant has been and is

committing the acts or omissions alleged herein in this District that caused some of the

injury and violated the rights of Plaintiff and to other blind and visually impaired customers

in this District under the ADA, the NYSHRL, NYCHRL and the Unruh Act.  A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

12. In particular, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public through its Websites.  Plaintiff lost all opportunities to complete a consumer business transaction being offered by Defendant due to the discriminatory roadblocks faced as a result of Defendant's failure to provide online goods and services that he could effectively utilize as a visually impaired person.

13. Further, these access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deters Plaintiff on a regular basis from accessing the Defendant's Websites in the future without the aid of a sighted person to help him navigate, which is antithetical to the freedoms promised to the visually impaired by the passage of federal and state disability civil rights legislation.

14. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## **PARTIES**

15. Plaintiff Laurel Hilbert resides in Washington, D.C. but routinely visits and stays with his parents in New York City, including the relevant time period.  In addition, during the period from approximately March 17 through April 9, Mr. Hilbert stayed in Los Angeles, California will retrieving a new visual support dog.  In each location, he attempted to access Defendant's Websites to complete transactions given his existing Ford purchase and loan. Regrettably, he was unsuccessful without the aid of a sighted person to help him complete the transaction due to the inaccessibility of the Websites.

16.    Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. §§ 12102(1) – (2), and the regulations implementing the ADA set forth at 28 C.F.R § 36.101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. CLS Exec. §§ 290, *et seq*., the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.*, and the Unruh Act under Cal. Civ. Code §§ 51, 52 and 54.6.

17.    Defendant Ford Motor Company ("Defendant" or "Ford") is and was at all relevant times a corporation incorporated in Delaware, headquartered in Michigan, and does business in the Southern District of New York and Los Angeles, California through its internet-based online consumer account access system and Websites and "brick and motor" store locations.

18.    Defendant owns and administers https://ford.com and its goods and services online and has offered them to the general public through its Websites, which are a public accommodation within the definition of the ADA, 42 U.S.C. § 12181(7) and the New York State Human Rights Law ("NYSHRL"), N.Y. CLS Exec. §§ 290, *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.* And the Unruh Act, Cal. Civ. Code §§ 51, *et seq*.

## NATURE OF ACTION

19.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually impaired persons alike.

20.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites and online platforms using keyboards in conjunction with screen access software

that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. Unless websites and/or mobile applications are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites and the information, products, and goods contained thereon.

21.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Nonvisual Desktop Access, otherwise known as "NVDA", and "JAWS" are popular, screen-reading software programs available for a Windows computer. "VoiceOver" is a popular program for Apple devices.

22.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users. For VoiceOver users such as Mr. Hilbert, relies on a Website's features and proper coding, including but not limited to "ARIA" ("accessible rich internet applications") in the Web Content Accessibility Guidelines ("WCAG"). ARIA provides what is presented visually for a visually impaired person.

23.     The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are

universally followed by most large business entities and government agencies to ensure their websites are accessible.

## STATEMENT OF FACTS

24. Defendant Ford Motor Company ("Defendant" or "Ford") is a Delaware corporation that owns and operates the ford.com online account access system and website offering features which should allow all consumers to access the goods and services provided via the internet throughout the United States, including the Southern District of New York.

25. Defendant's Websites offer its products and services to the public. The Websites offer features which ought to allow and avail consumers the ability to peruse numerous functions to complete a sought-after business transaction, including, as in Mr. Hilbert's case, the ability to pay down a consumer car loan.

26. Plaintiff Laurel Hilbert is a visually impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient VoiceOver screen-reader user and uses primarily VoiceOver to access the internet, online programs within websites and/or mobile applications. Plaintiff has visited and attempted to access Defendant's Websites using a screen-reader on numerous occasions.

27. While residing with his parents in New York City between December 20, 2022 to early January 2023, Plaintiff has visited and attempted to access Defendant's online account access system and Websites using screen-reading software in order to access his personal car loan information and to pay his bill. Regrettably, he was unable to do so due to inaccessibility issues. This required Mr. Hilbert to contact an outside disability rights service to utilize the help of a sighted person to complete the transaction.

28.     Despite his efforts, Plaintiff was denied a user experience similar to that of a sighted individual due to the Website's lack of a variety of features and accommodations, which effectively barred Plaintiff from being able to enjoy the privileges and benefits of Defendant's goods and services.

29.     Screen-reading software includes the functionality "Quick Navigation," which enables screen readers to navigate through a website using its headings, links, buttons, tables, etc. Specifically, when a screen reader types letters, they correspond to what kind of functions a screen reader uses to learn what it is that a website offers.  For example, if Mr. Hilbert enables "Quick Navigation," he can navigate through a website by using its headings.  He will press "H" on his keyboard once "Quick Navigation" is enabled.

30.     When websites do not incorporate the proper coding to mark the functions on their website, the "Quick Navigation" functionality is unable to locate functions on the website because they are unable to read where the headings, links, buttons, tables, etc. are located.

31.     For Ford, when Mr. Hilbert attempted to find headings in Ford's Website with "Quick Navigation" enabled, his screen-reading software read aloud, "Heading not found."  This forced him, along with other visually impaired screen readers, to then attempt to navigate through the website using links or buttons.

32.     Regrettably, Defendant's Websites did not work for links or buttons either.  When Mr. Hilbert used buttons and links on Ford's Websites to navigate through the website to see how he could make a payment on his account, he was unable to find a button and link that clearly states how to make a payment.  This forced him, along with other screen readers, to explore through ***all of the available buttons and links*** to begin attempting to make a payment through Ford's Websites.

33.    After Mr. Hilbert navigated through all of the buttons and links to find payment information for his Ford vehicle, he was then able to see buttons providing options.  However, when he clicked on the "Cancel Automatic Payments" button as instructed, not only is there no indicator reading aloud to him whether or not a new window or tab or function opened, but he was also forced into a situation where he needs to navigate through the Website again via Ford's links and buttons to find whether the button led him to a new set of links, buttons, or options.

34.    Even after using the links and buttons to navigate through the page, Mr. Hilbert was still unable to hear any options or steps he could follow to cancel his automatic payments.  Thus, he was left to try to navigate through the page once more, listening to all of the buttons and links to make his own way to the payment menu once again.

35.    The inaccessibility of Defendant's Websites did not end there. The same issue regarding payment transactions also arose for other buttons and links available under the "Make a Payment" function.  When Mr. Hilbert finally found and tried to click the "Make a Payment" function, he faced the same situation where not only did the Website fail to read aloud the pop-up column that arose, but he was unable to use the buttons and links on the Website to make his way to the actual "Make a Payment" button.

36.    Not only was he completely unaware of the column that arose because he could not "see" it and can only use audio to navigate through the page, but also the navigation tool "Quick Navigation" functionality that he uses to navigate through the Website was unable to get to the actual button because there was no computer coding available for Mr. Hilbert to access that particular button.

37.     In addition, for the "Make a Payment" button, when he clicks on it and performs a right arrow to interact with content within it, instead of the Website allowing functionalities, it repeatedly took him to "LIVE CHAT." That is no accessible.

38.     Mr. Hilbert refreshed the screen to try to make a payment again. However, upon doing so, the "Make a Payment" button disappeared and was not an option. It was not there anymore.

39.     Mr. Hilbert had a similarly frustrating experience navigating through the use of buttons, as many of them state "more information" instead of displaying the title of the button.

40.     Defendant's Website is not coded properly so Quick Navigation is not working. Screen reading software did not recognize proper HTML markings.

41.     In short, Mr. Hilbert owns a Ford car and has an online account so that he can make payments, etc. Because of inaccessibility, he has had to resort to using customer service or an outside organization that provides sighted helpers for visually impaired persons each time he tries to do so. He should be able on his own to make a payment, change his bank account, schedule a payment and schedule an automatic payment. He cannot do so because of the Websites' inaccessibility.

42.     For the visually impaired, this inaccessibility is especially paralyzing due to their inability to access the entirety of the Websites as the screen reader software Plaintiff and those similarly situated depend on prevents them from navigating through the Website's key features, making certain selections on Defendant's Websites impossible on their own.

43.     Feeling frustrated, Mr. Hilbert attempted to search for the contact information of Defendant's customer service to inform them of the issue he was having. However, Mr. Hilbert was unable to find the information as Defendant failed to include an email address nor phone number for an accessibility consultant or customer service agent. Thus, Mr.

Hilbert was only able to leave Defendant feedback through its general feedback form on Defendant's Website.

44. These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's Websites the same way sighted individuals do.

45. Upon information and belief, Defendant's policies and practices denied Plaintiff, along with other blind or visually impaired users, access to Defendant's Websites. Those policies and/or practices therefore specifically denied the goods and services that are offered to the general public.

46. Due to Defendant's failure and refusal to remove access barriers to its Websites, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's Websites, and the numerous goods, services and benefits offered to the public through those Websites.

47. The access barriers Plaintiff encountered have caused a denial of his full and equal access in the past, and now deter Plaintiff on a regular basis from utilizing the Websites, presently and in the future.

48. If the Websites were equally accessible to all, Plaintiff could independently navigate the Websites and access and complete the desired business transaction through Defendant's Websites as sighted individuals do. He also would not have to use the services of a sighted person to perform simple transactions and interactions with Defendant's Websites. It is humiliating for a visually impaired person to rely upon the largess of sighted strangers to navigate through the world. The internet world is no different.

49. Through his attempts to use the Websites, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and

visually impaired persons. Plaintiff attempted to use Defendant's Websites from New York from December 2022 through January 2023. Plaintiff's most recent interaction with Defendant's Websites was on or about March 17, 2023 while temporarily living in Los Angeles, California. Again, he had to resort to using a service that provides sighted helpers to allow him to complete his loan payment transaction.

50.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually impaired consumers with equal access to the Websites, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

   a.  Constructing and maintaining Websites that are inaccessible to visually impaired individuals, including Plaintiff;

   b.  Failing to construct, update and maintain Websites that are sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and

   c.  Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff, as a member of a protected class.

51.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

52.     The Americans with Disabilities Act ("ADA") expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of … this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities … Where appropriate, injunctive relief shall also include requiring the … modification of a policy …

42 U.S.C. § 12188(a)(2).

53.  Upon information and belief, because Defendant's Websites have never been accessible, and Defendant does not have, and never had, an adequate corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a.  That Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultants") who shall assist it in improving the accessibility of its Websites so that the goods and services on them may be equally accessed and enjoyed by individuals with vision-related disabilities;

b.  That Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in its Websites' development and content development be given web accessibility training on a periodic basis at least two (2) times per year, including onsite training to create accessible content at the design and development stages;

c.  That Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis at least two (2) times per year to evaluate whether its Websites may be equally accessed and enjoyed by individuals with vision-related disabilities on an ongoing basis;

d.  That Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis at least two (2) times per year with said testing to be performed by individuals with various disabilities to evaluate whether its Websites may be equally accessed and enjoyed by individuals with vision-related disabilities on an ongoing basis;

e.  That Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and tollfree phone number to report disability accessibility-related problems; and

f.  That Defendant and its computer and/or internet experts monitor Defendant's Websites for up to two (2) years after the Mutually Agreed Upon Consultant validates that the Websites are free of accessibility errors/violations to ensure that it has adopted and implemented adequate accessibility policies.

g.  That Defendant provide Plaintiff's counsel and this Court a report every six (6) months of its efforts to comply and its continued compliance with the ADA, including a representation and warranty that its Websites are free of accessibility errors/violations and to ensure that it has adopted and implemented adequate accessibility policies, which remain legally compliant with disability laws, functional and up-to-date.

54.  Web-based technologies have features and content that are modified on a daily, and in some instances, hourly basis and a one-time "fix" to an inaccessible website and/or mobile application will not cause the website and/or mobile applications to remain accessible without a corresponding change in corporate policies related to those web-based technologies.  To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful and legally-compliant manner that will cause the website and/or mobile applications to remain accessible, Defendant's Websites must be reviewed on a periodic basis not less than two (2) times per year using both automated accessibility screening tools and end user testing by disabled individuals.

55.    Although Defendant may currently have centralized policies regarding maintaining, updating and operating its Websites, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

56.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining its Websites and has generated significant revenue from its Websites and associated transactions at its "brick and mortar" locations throughout the United States, including New York, New York and Los Angeles, California.  These amounts are far greater than the associated cost of making its Websites equally accessible to visually impaired customers.

57.    Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Websites, violating their rights.

### FIRST CAUSE OF ACTION
### Violation of the Americans with Disabilities Act
**(42 U.S.C. § 12181 *et seq.*)**

58.    Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59.    Section 302(a) of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

60.    Defendant's Websites are a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  *See Martinez v. Gutsy LLC*, 2022 U.S. Dist. LEXIS

15

214830, 2022 WL 17303830, at *1, 7 (E.D.N.Y. Nov. 29, 2022) (on a motion to dismiss, holding that plaintiff plausibly stated a claim of discrimination due to allegedly inaccessible website); *Del-Orden v. Bonobos, Inc.*, 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *1 (S.D.N.Y. Dec. 20, 2017) (same); *Romero v. 88 Acres Foods, Inc.*, 580 F.Supp.3d 9, 19 (S.D.N.Y. 2022) (collecting cases); *see also Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 154249, at *2 (S.D.N.Y. Aug. 26, 2022) ("concur[ing] with the vast majority of other judges in this District who have decided the issue that a 'place of public accommodation' includes public-facing websites that are not tethered to a physical location" while "not[ing] that at least seven of its colleagues, one of whom has since ascended to the Second Circuit, have found that Title III of the ADA applies to websites"); *Wilson v. Fabric Cellar, Inc.*, No. 20-CV-244S, 2021 U.S. Dist. LEXIS 130536 (W.D.N.Y. July 13, 2021) (choosing to "assume without deciding" that the website is a place of public accommodation based on the weight of the case law in the circuit); *Slade v. Life Spectacular, Inc.*, No. 22-CV-0037 (ALC), 2022 U.S. Dist. LEXIS 220079, at *9 (S.D.N.Y. Dec. 5, 2022); *Panarese v. Sell It Soc., LLC*, No. 19-CV-3211 (ARR) (RML), 2020 U.S. Dist. LEXIS 119002, at *2 (E.D.N.Y. July 2, 2020), *adopted by* 2020 U.S. Dist. LEXIS 139893, (Aug. 5, 2020); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 550 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398 (E.D.N.Y. 2017).

61. The Websites are a service offered to the general public and, as such, must be equally accessible to all potential consumers.

62. In addition, the Websites are tethered to specific Ford car dealership locations depending on the area of the country where the patron accesses the Websites.

63. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

64. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

65. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. §§ 12182(b)(2)(A)(ii) – (iii).

66. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

67. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A) – (2)(A).

68.     Furthermore, Plaintiff has been denied full and equal access to the Websites offered by Defendant, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

69.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**SECOND CAUSE OF ACTION**
**Violation of the NYSHRL**
**(N.Y. CLS Exec. §§ 290, *et seq.*)**

70.     Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.     The New York State Human Rights Law ("NYSHRL") guarantees "equal opportunity to enjoy a full and productive life" whereby "every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state" as the state works towards "eliminat[ing] and prevent[ing] discrimination in … places of public accommodation … and to take other actions against discrimination[.]" N.Y. CLS Exec. § 290(3).

72.     The NYSHRL also states: "The term 'disability' means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment[.]" N.Y. CLS Exec. § 292(21).

73.    Plaintiff has a physical disability as a visually impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software.

74.    Pursuant to the NYSHRL: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, … because of the … disability, …, of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof[.]" N.Y. CLS Exec. § 296(2)(a).

75.    Defendant is systematically violating the NYSHRL.

76.    Defendant is a "place of public accommodation" within the meaning of the NYSHRL because it is an "establishment dealing with goods and services of any kind," N.Y. CLS Exec. § 292(9), which includes the provision of Websites to consumers in the State of New York.

77.    Defendant's Websites are a service provided by Defendant that is inaccessible to patrons like Mr. Hilbert who is visually impaired.  This inaccessibility has denied those visually impaired full and equal access to the facilities and services Defendant makes available to the non-disabled public.  Defendant has violated the NYSHRL by denying visually impaired customers the services and products provided by its Websites.  These violations are ongoing.

78.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the NYSHRL because Defendant constructed and/or maintains its Websites, which are inaccessible to Plaintiff, knowingly maintains its Websites in their inaccessible form, and has failed to take adequate actions to correct these discriminatory barriers even after being notified of the effects of that discrimination.

79.    Defendant is also violating the NYSHRL because the conduct alleged herein likewise constitutes a violation of the various provisions under the ADA, 42 U.S.C. § 12101 *et seq.* The U.S. District Court for the Southern District of New York has held that a claim for disability discrimination under the NYSHRL is governed by the same legal standards as the ADA. *Range v. 535 Broadway Grp. LLC*, 2019 U.S. Dist. LEXIS 149905 at *16 (S.D.N.Y. 2019) (*citing Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (citation omitted)); *see also Sullivan v. Study.com LLC*, 2019 U.S. Dist. LEXIS 47073 at *16 (S.D.N.Y. 2019) ("It is true that the NYSHRL … [is] governed by the same legal standards that courts apply to ADA disability discrimination claims.").

80.    Defendant's actions were and are in violation of the ADA and NYSHRL and, therefore, Plaintiff and others similarly situated are entitled to injunctive relief remedying the discrimination. N.Y. CLS Exec. §§ 297(4)(c)(i) – (ii).

81.    Plaintiff and those similarly situated are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the NYSHRL and requiring Defendant to take the steps necessary to make its Websites readily accessible to and usable by visually impaired individuals. N.Y. CLS Exec. §§ 297(4)(c)(i) – (ii).

82.    Defendant's denial of accessible Websites and its discrimination against Plaintiff and those similarly situated renders it liable for each and every offense for compensatory damages in an amount to be determined by a jury and civil penalties that may be determined by the Court.  N.Y. CLS Exec. §§ 297(4)(c)(iii) – (vi).

**THIRD CAUSE OF ACTION**
**Violation of the NYCHRL**
**(N.Y.C. Admin. Code §§ 8-101, *et seq.*)**

83.   Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges

every allegation of the preceding paragraphs as if fully set forth herein.

84.   The New York City Human Rights Law ("NYCHRL") declares that "there is no greater

danger to the health, morals, safety and welfare to the city and its inhabitants than the

existence of groups prejudiced against one another and antagonistic to each other because

of their actual or perceived differences, including those based on … disability[.]" N.Y.C.

Admin. Code § 8-101.

85.   The NYCHRL defines a disability as "any physical, medical, mental or psychological

impairment, or a history or record of such impairment. … The term 'physical, medical,

mental, or psychological impairment' means: [a]n impairment of any system of the body;

including, but not limited to, the neurological system; the musculoskeletal system; the

special sense organs and respiratory organs, including, but not limited to, speech organs;

the cardiovascular system; the reproductive system; the digestive and genito-urinary

systems; the hemic and lymphatic systems; the immunological systems; the skin; and the

endocrine system[.]" N.Y.C. Admin. Code § 8-102.

86.   Plaintiff has a physical disability as a visually impaired and legally blind person, who

cannot use a computer without the assistance of screen-reading software.

87.   Pursuant to the NYCHRL: "It shall be an unlawful discriminatory practice for any person

who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent,

agent or employee of any place or provider of public accommodation: [b]ecause of any

person's actual or perceived … disability, …, directly or indirectly: [t]o refuse, withhold

from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation[.]" N.Y.C. Admin. Code § 8-107(4)(1)(a).

88.    Defendant is a "place of public accommodation" within the meaning of the NYCHRL because it is a *provider* "of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available[,]" N.Y.C. Admin. Code 8-102, which includes the provision of Websites to consumers in New York City.

89.    Defendant is systematically violating the NYCHRL.

90.    Defendant's Websites are a service provided by Defendant that is inaccessible to patrons like Mr. Hilbert who is visually impaired.  This inaccessibility has denied those visually impaired full and equal access to the facilities and services Defendant makes available to the non-disabled public.  Defendant has violated the NYCHRL by denying visually impaired customers the services and products provided by the Websites.  These violations are ongoing.

91.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the NYCHRL because Defendant constructed and/or maintains its Websites, which are inaccessible to Plaintiff, knowingly maintains its Websites in this inaccessible form, and has failed to take adequate actions to correct these discriminatory barriers even after being notified of the effects of that discrimination.

92.    Defendant is also violating the NYCHRL because the conduct alleged herein likewise constitutes a violation of the various provisions under the ADA, 42 U.S.C. §§ 12101 *et seq.*

and the NYSHRL, N.Y. CLS Exec. §§ 290 *et seq.* The U.S. District Court for the Southern District of New York has held that the NYCHRL has a "one-way ratchet whereby the ADA standard constitutes its floor." *Sullivan v. Study.com LLC*, 2019 U.S. Dist. LEXIS 47073 at *16 (S.D.N.Y. 2019) (*citing Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Specifically, the Second Circuit Court of Appeals has affirmed that the NYCHRL "must be reviewed independently from and 'more liberally' than their federal and state counterparts" where interpretation of state or federal statutes with similar wording "may be used to aid in interpretation of [the NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a *floor* below which the [NYCHRL] cannot fall." *Leoffler*, 582 F.3d at 278 (*quoting* THE LOCAL CIVIL RIGHTS RESTORATION ACT OF 2005, N.Y.C. Local Law No. 85 (2005) at § 1).

93.     Defendant's actions were and are in violation of the ADA, NYSHRL, and the NYCHRL and, therefore, Plaintiff and others similarly situated are entitled to injunctive relief remedying the discrimination.

94.     Plaintiff and those similarly situated are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the NYCHRL and requiring Defendant to take the steps necessary to make its Websites readily accessible to and usable by visually impaired individuals. N.Y.C. Admin. Code § 8-120(a).

95.     Defendant's denial of accessible Websites and its discrimination against Plaintiff and those similarly situated renders it liable for each and every offense for compensatory damages in an amount to be determined by a jury, civil penalties, and reasonable attorney's fees and costs that may be determined by the Court. N.Y.C. Admin. Code §§ 8-120(a), 8-126(a).

**FOURTH CAUSE OF ACTION**
**Violation of the Unruh Civil Rights Act**
**(Cal. Civ. Code §§ 51, *et seq.*)**

96.     Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97.     The Unruh Act guarantees equal access for people with disabilities to accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendants are systematically violating the Unruh Act, Cal. Civ. Code §§ 51, *et seq.*

98.     Defendants' Websites, which are associated with "brick and mortar" car dealership locations through New York, California and the rest of the United States are "business establishment[s]" within the meaning of the Unruh Act.  Upon information and belief, Defendant generates millions of dollars in revenue from the sale of its goods and/or services in New York, California, and the rest of the United States through its Websites and associated car dealerships.

99.     Defendant's Websites are a service provided by Defendant that is inaccessible to patrons like Mr. Hilbert who are visually impaired.  This inaccessibility has denied those visually impaired full and equal access to the facilities and services Defendant makes available to the non-disabled public.  Defendant has violated the Unruh Act by denying visually impaired customers, like Mr. Hilbert, the Websites' services and products. These violations are ongoing.

100.     Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Act because Defendant constructed and/or maintained its Websites, which are inaccessible to Plaintiff, knowingly maintains its Websites in this

inaccessible form, and has failed to take adequate actions to correct these discriminatory barriers even after being notified of the effects of that discrimination.

101.    Defendant is also violating the Unruh Act because the conduct alleged herein likewise constitutes a violation of the various provisions under the ADA, 42 U.S.C. § 12101 *et seq.* Section 51, subsection f of the Unruh Act provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Act. Cal. Civ. Code § 51(f).

102.    Defendant's actions were and are in violation of the Unruh Act and, therefore, Plaintiff and others similarly situated are entitled to injunctive relief remedying the discrimination.

103.    Plaintiff and those similarly situated are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Act and requiring Defendant to take the steps necessary to make its Websites readily accessible to and usable by visually impaired individuals.

104.    Defendant's denial of accessible Websites and its discrimination against Plaintiff and those similarly situated renders it liable for each and every offense for the actual damages, and any amount that may be determined by a jury up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000), and any reasonable attorney's fees and costs that may be determined by the Court.  Cal. Civ. Code § 52(a).

105.    On at least one occasion on or about March 17, 2023, Plaintiff attempted unsuccessfully to gain access to Defendant's Websites on his own.  As a result of the inaccessibility of the Websites and its features, Plaintiff had to resort to contacting a sighted person to seek assistance to complete his loan payment transaction.  Accordingly, Defendant's actions

entitles Plaintiff to a minimum damage of at least $4,000.00, which a jury may treble based on testimony at trial.

106.    Plaintiff also seeks reasonable attorneys' fees and costs to pursue this lawsuit and relief.

### FIFTH CAUSE OF ACTION
### Declaratory Relief

107.    Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

108.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends and is informed and believes that Defendant denies that its Websites contain access barriers denying blind and/or visually impaired customers the full and equal access to the products, services and facilities contained in its Websites, which Defendant owns, operates and controls, fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, the NYSHRL, the NYCHRL, and the Unruh Act, prohibiting discrimination against the blind and visually impaired.

109.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

A.    For a judgment that Defendant violated Plaintiff's rights under the ADA, the NYSHRL, the NYCHRL and the Unruh Act;

B.    A preliminary and permanent injunction prohibiting Defendant from violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182, *et seq.*, the NYSHRL, the NYCHRL and the Unruh Act;

C.     A preliminary and permanent injunction requiring Defendant to take all steps necessary to make its Websites fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the Websites are regularly accessible to and usable by blind and visually impaired individuals;

D.     A declaration that Defendant owns, maintains, and/or operates its Websites in a manner that discriminates against the blind and visually impaired persons, and which fails to provide access for persons with disabilities as required by the ADA, the NYSHRL, the NYCHRL and the Unruh Act;

E.     Economic, compensatory and/or punitive damages under the NYSHRL, the NYCHRL, and/or Unruh Act, as applicable, in an amount to be determined at trial;

F.     Pre- and post-judgment interest;

G.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

H.     Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: April 28, 2023                                     Respectfully submitted,

**KALBIAN HAGERTY, LLP**

By    /s/ Eric L. Siegel
Eric L. Siegel (Bar No. 2344935)
esiegel@kalbianhagerty.com
888 17th Street, N.W., Suite 1200
Washington, D.C. 20006
(202) 223-5600 (Office)
(202) 223-6625 (Facsimile)

*Attorney for Plaintiff Laurel Hilbert*

**VERIFICATION**

I, Laurel Hilbert, have read the factual allegations of this Verified Complaint for which I provided direct personal experience and information pertaining to the inaccessibility of Defendant's Websites and verify under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.  Executed on this 27th day of April, 2023.

DocuSigned by:

*Laurel Hilbert*

DC1A383A843446B

Laurel Hilbert, Plaintiff

4/27/2023